FARMERS' LOAN & TRUST CO., Trustee, *v.* TEXAS WESTERN RY. CO.
and others.

(*Circuit Court, E. D. Texas.* 1887.)

RAILROAD MORTGAGE—FORECLOSURE—INTERVENTION AFTER DECREE.

A trust company, citizen of New York, filed a bill in the federal court against a railway company, citizen of Texas, to foreclose a mortgage, and for a sale of the premises, and also asked that certain persons, citizens of Texas, who had obtained judgments, and were seeking to enforce them, against the railway company in the state court, be made parties, and required to assert their claims, in the action in the federal court. Pending the hearing of the bill, a sale of the road was had, pursuant to a decree of foreclosure rendered in the state court in favor of a citizen of Texas, who was made a party to the bill. It was purchased by a citizen of New York, who afterwards assented to an appointment of a receiver in the federal court. *Held,* after judgment on the bill *pro confesso* against the defendants, citizens of Texas, that citizens of New York, who claimed an interest in the road acquired after the jurisdiction of the federal court had attached, as being the real parties in interest for whom the sale and purchase in the state court was had, were entitled to intervene and set up their rights.

In Chancery. Plea in intervention.

The Farmers' Loan & Trust Company, a corporation created under the laws of the state of New York, and a citizen of New York, filed its complaint against the Texas Western Railway Company and the Texas Western Narrow-Gauge Railway Company, both corporations organized under the laws of, and having their principal offices in, the state of Texas, and citizens of the state of Texas, seeking the foreclosure of a certain mortgage which had been executed to the complainant by the defendant narrow-gauge railway company to secure its mortgage bond-holders. The defendant narrow-gauge railway company had previously been sold by decree of the United States circuit court, and the bond-holders had purchased it, reorganizing under the name of the Texas Western Railway Company, defendant herein; which company, under the agreement of reorganization, assumed the mortgage sued on. The complaint sets out that Mary F. Gentry, administratrix of Abram M. Gentry, deceased, a citizen of Texas, James A. Baker, Walter B. Botts, James A. Baker, Jr., James G. Tracy, and David C. Ruby, all citizens of the state of Texas, had obtained judgments· in the state courts, and obtained the appointment of a receiver therein, who had taken charge of the property; that these judgment liens were inferior to plaintiff's lien; that the defendant the Texas Western Railway Company was hopelessly insolvent; and asked that these judgment creditors be enjoined from prosecuting their claims in the state courts; that they be made parties to this action, and be required to set up their claims; for the appointment of a receiver, accounting, and a sale of the premises.

Pending this action, the defendant herein Mary F. Gentry, administratrix of Abram M. Gentry, deceased, caused to be ordered in the state court a sale of the Texas Western Railway Company, to satisfy her judgment for a claim due Abram M. Gentry, deceased, and to foreclose a

mortgage lien on the premises for the same; and the property was sold, May 5, 1885, to one John Cummins, who acted for Elijah Smith, a citizen of New York, and the sale was confirmed, and title made to Cummins, who conveyed the same to Smith.

The defendants in this action failing to appear and plead, judgments *pro confesso* were taken, March 18, 1886, and June 7, 1886; and on October 26 or 27, 1886, complainants, with the assent of Smith, made application for a receiver in this court, and asked that the claims of the intervenors, acquired pending this suit, and subject thereto, so far as the same are valid, should be asserted under the receivership in this court.

On October 30, 1886, Walter S. Cowles, Henry H. Boody, J. C. Chew, James R. Young, and C. C. Campbell, all citizens of New York, with leave of court, filed their motion to be allowed to appear as defendants in this cause, and to be allowed to plead thereto before final judgment, and to have the judgments *pro confesso* set aside; they averred that they were the actual owners of the larger part of the Gentry claim, to-wit, three-fourths, at the date of the institution of the said suit in the state court, but the legal title thereto was in Gentry, and the suit was prosecuted by Gentry's administratrix, for the whole claim; that at the instance of Elijah Smith, who then controlled the Texas Western Railway Company, they entered into an agreement with him by which they transferred to him their interest in the Gentry claim,—he stipulating within 90 days, or as soon as possible, after the date of the agreement, to deliver to them first mortgage bonds of the Texas Western Railway to the amount of 62½ per cent. of their original holdings, and that upon his failure so to do he would restore and reconvey to them their said previous holdings, rights, and interests unimpaired; that at the said sale Smith purchased the said property for the amount of the Gentry claim, actually paying therefor only the amount of the interest of the Gentry estate, and crediting on the bid, as his own share of the judgment, the amount transferred to him by the above agreement, using their interest in the same to pay for said property, and that he has wholly failed and refused to deliver the first mortgage bonds as agreed; that Smith has failed to defend this suit, as he was in good faith to these orators bound to do; that by his payment of the amount due the Gentry estate he has thereby divested it of any right to defend, and has procured the other parties defendant to withdraw their claims; and that if these parties are not permitted to intervene, and have the judgments *pro confesso* set aside, their interests in the Gentry claim and purchase by Smith will be utterly destroyed.

*Turner, Lee & McClure,* (*Herbert B. Turner* and *Stewart & Breaker,* of counsel,) for the Farmers' Loan & Trust Company.

*Hutcheson, Carrington & Sears,* for intervenors.

SABIN, J. In this case the bill was filed February 10, 1885, to foreclose a mortgage executed by the defendant narrow-gauge railway, dated September 17, 1878, securing by lien on its road-bed, franchises, and property some 350 $1,000 7 per cent. bonds, dated October 1, 1878,

with "coupons attached," maturing on the first days of April and October of each year, while said bonds matured October 1, 1918, (the mortgage was executed September 17, 1878,) and whereof the holders of 340 of said bonds had requested foreclosure of the same.

At the time the suit was filed, a decree of foreclosure had been rendered by the state district court of Harris county, which held possession of the property embraced in the mortgage sued on herein through its receivers in a suit against the Texas Western Railway Company, one of the defendants herein, which was a species of phœnix from the ashes of the Texas Western Narrow-Gauge Railway Company, through the kind offices of this court in a previous and different suit, and the Texas Western Construction Company as a species of godmother, co-operating with Abram M. Gentry in clearing up all the old *debris* of the Western Narrow-Gauge Railway, (and particularly the bonds now here in suit,) for which services he was to receive $200,000 in the first mortgage bonds of the Texas Western Railway Company thereafter to be created, and which were to issue as a portion of some $800,000 bonds of same class, and to take the place, among other things, of the bonds in suit here.

It seems that when Gentry had completed his contract, that the Texas Western Railway Company recognized his services, and acknowledged its liability to him; and, Gentry dying, his administratrix sued for the same, and obtained judgment therefor,—the court treating a contract for the making of a mortgage and issuance of bonds, which ought to have been done, as having been done, and foreclosed the same as if they were in actual being; just after which this bill was filed, the property then being in the hands of the state court, and so remained until after sale to Cummins for Smith.

It would seem that the parties interested, and so soon to open a varied litigation, were, up to the date of Gentry's death, engaged in the common pursuit of organizing the Texas Western Railway Company, embodying the assets of the Texas Western Narrow-Gauge Railway Company, for which $800,000 first mortgage bonds were to be issued; and that at some period an effort had been made to issue them, but which failed for want of formality. It is apparent that the intervenors herein were likewise part owners of a component part of the Gentry claim against the Texas Western Railway Company, and that the assertion of the same by his administratrix, with an attendant foreclosure, was hostile to the general purpose of the parties engaged in the formation of that company, and calculated to mar their expectations. It seems that, with the view of protecting their rights, these intervenors transferred all their claims, amounting to $117,600 first mortgage bonds, $16,750 income bonds, and $72,000 of capital stock, to one Elijah Smith, and that the Texas Western Railway was sold; by which sale said Smith acquired the title thereto, making payment therefor with their assigned claims to the extent of $105,500, and some $40,000 in cash paid by himself.

It will be observed here that this was a sale as under first mortgage bonds of the Texas Western Railway Company; and, further, that the foreclosure sought in this suit is of bonds of prior date, on property trans-

ferred by the Texas Western Narrow-Gauge Railway Company to the Texas Western Railway Company anterior to such foreclosure sale; and that Smith was placed in the possession of all the property; and that nothing now remained to be done, so far as the general purposes of reorganization were concerned, but the actual perfection of the reorganization of the Texas Western Railway Company, and the issuance of the bonds originally contemplated, in lieu of those sued on herein, and which latter had been collated by Gentry, and whose administratrix had recovered the compensation earned by him for such collation, and in which compensation intervenors had been or were interested, although embarrassed by the methods resorted to for its enforcement as having been contrary to the general programme of themselves and the construction company, who, aside from the claims of the administratrix, were sole masters of the situation.

This purchase of Elijah Smith, under decree of December 16, 1884, on the ——— day of December, 1885, rendered him master of the situation, according to the strict rules of the common law and Rev. St. Tex. art. 4260, to the extent of road then constructed; and it is evident that had he executed, or caused to be executed, to these intervenors, $100,000 in first mortgage bonds, and bonds to himself and associates, and others sufficient to cover the bonds sued on, and not to exceed $800,-000, that the title to the road, with all necessary powers, would have been in him, and all these contentions would have been unnecessary. But it is said that Smith is not a party to this suit, and cannot be made so, as he is a citizen of New York, as well as the complainant herein, and as well, also, as these intervenors, and that this court cannot have jurisdiction over them or their contentions. However this may be, these contentions will have to be litigated herein, or this suit will have to be dismissed.

This is a suit by a citizen of New York against citizens of Texas, and the jurisdiction of this court attached after the decree of foreclosure in the state court, and before the sale and purchase by Smith. Smith was neither a necessary nor proper party at the time of the institution of this suit; neither were these intervenors, who anterior to their intervention herein, to-wit, October 5, 1886, had sued him in the state court; and, had he retained possession of the property purchased, it is not likely that this intervention would have been at all necessary, as the whole matter could have been litigated therein without the embarrassment of jurisdictional questions. But on the twenty-sixth or twenty-seventh day of October, as the case may be, A. D. 1886, the complainant herein asked for the appointment of a receiver of the property in question, with the assent of said Smith accompanying their application; and while said property was brought into this court by such joint action of plaintiff and Smith, without notice to intervenors, as into a city of refuge, and hung upon the horns of the altar, yet the application for receivership asks "that all claim of the intervenors having been acquired pending this suit, and subject thereto, so far as the same is valid, should be asserted under the receivership in this court."

This prayer in the application for a receiver is exactly my view of the law of this case. Had this suit been instituted after the sale to Smith, he would have been then a necessary party, as a virtual owner of the road, and the suit could not have been brought in this court; but jurisdiction having attached herein, and the bonds being narrow-gauge bonds, he is as important a party as the Texas Western Railway Company originally was; and the jurisdiction having attached, and Smith having assented to a receiver, and his brother having been appointed receiver herein, and he himself having made several affidavits in the case, seemingly voluntarily, in support of the plaintiff's claim, it is evident that while the main litigation as to foreclosing the mortgage securing the bonds may go on and be determined herein, yet in the ascertainment of to what extent complainants can recover thereon, and have such foreclosure made, it is evident that the rights of the intervenors may be considered; and Smith, having turned the property over to a receiver appointed herein with his assent, may properly make himself a party hereto, or may be made so either by complainants or intervenors, or the same may be proceeded with *in rem*, and the rights of the intervenors in the property, or to first mortgage bonds, may be treated as issued and due, in whole or in part, and entitled to foreclosure, and as of the same or higher grade and rank as the bonds sued on herein, or practically of the same grade and rank; that is to say, if these intervenors have in point of fact the right to establish their rights as set up by them in the papers herewith submitted to me. In the view I have taken of the case, the sale in the state court either perfected in them a title to the road as part owner, or as entitled to $100,000 in first mortgage bonds, to be issued with certain other bonds to which those in suit were to be subrogated or canceled. For the assertion of these rights, or either of them, as an intervening plaintiff, there can be no doubt but that the intervenors may do so herein. To fail to do so would result in the absolute destruction of their rights to the same. If the plaintiff herein is the trustee of any or all of the interest of Smith in the bonds sued on, there is nothing to hinder the assertion of all his rights thereto under the trustee. If the Texas Western Railway Company is the Texas Western Narrow-Gauge Railway Company, and has been sold out to said Smith, and he has turned its effects into this court to be administered upon nominally between a species of shadowy beings, there can be no objection to parties having an interest in the property, or the right to first mortgage bonds thereon, from asserting their rights thereto in the premises in the matter of its disposition or the enforcement of liabilities thereon. I do not see any difficulty in Smith himself becoming an intervening plaintiff herein for the assertion of any rights which he may have in these bonds sued on, or leaving the same wholly with the plaintiff trustees.

If it should be admitted, or a conclusion should be reached, that the intervenors herein were entitled to recover as against defendants, or either of them, to the extent of $100,000 or more, as of first mortgage bonds of the Texas Western Railway Company, of equal or greater rank to those sued upon, and that complainant trustees should likewise also

recover of defendants the amount of the bonds sued upon, and the property be decreed to be sold, and the proceeds, after payment of costs, etc., should be ratably divided between the intervenors and trustees, then, and in such case, in the absence of the question of title herein, justice would seem reasonably to be reached between the parties herein. But with the matter of what are the real rights between the parties, or the real facts of the case, I do not undertake to speak now. The case has been presented to me under a variety of suppositions as to actual rights and facts, but, in deciding upon these exceptions, I have to take as true the allegations set up by the intervenors; having reference, nevertheless, to such affidavits, documents, and pleadings as have been submitted to me.

In the great multitude of statements presented it may be that I have fallen into some errors of statement; but I feel quite sure that the intervenors have presented such an interest in the property, or its disposition, either under title or bonds, as the case may be, as to entitle them to come in and assert their rights, either to part ownership of the property above plaintiff's right to foreclosure, or to bonds of equal or higher grade to those of plaintiff, and to the foreclosure of the same, and a *pro rata* distribution of the proceeds. Whatever may be their rights, they clearly have the right to intervene and prosecute them herein. It would be wrong in this court to make use of its power over the property and jurisdiction herein to overthrow and utterly ruin the rights of parties which have fully matured and been brought into shape since the institution of this suit, although having an inchoate or incipient existence previous thereto. The complicated nature of the various transactions placed under consideration, however simple in themselves, have had a tendency to confuse and embarrass the mind; but I think I have fairly solved the problem of the method for the protection of the rights of all parties herein, and hence shall make the order annexed hereto in said cause.

### ORDER.

In this case, the exception of complainant to the plea in intervention of Walter S. Cowles, H. H. Boody, and others, coming on to be heard at a former day of this term, and the same having been presented and argued and submitted to the court, and the same having been duly considered by the court, and it being the opinion of the court that the law is with the intervenors, it is therefore ordered that the exceptions of complainant to the plea of intervention herein be overruled; that complainant have until the rule-day in July, 1887, to make plea or answer thereto, and that all judgments or decrees *pro confesso* entered herein be set aside; and that both plaintiff and defendants and intervenors have leave to file such pleadings, or further amended pleadings, herein as they may desire, with right of replication thereto as in the usual course and time for making the same; and that this order be entered upon the minutes of the court.